**DIAMOND OFFSHORE MANAGEMENT COMPANY, Appellant,**

v.

**Lela GUIDRY, individually and as next friend of Hunter Guidry and as Independent Administratrix of the Estate of Craig Guidry, Appellees.**

No. 09–01–367 CV.

Court of Appeals of Texas, Beaumont.

Submitted on April 4, 2002.

Delivered July 25, 2002.

Michael K. Rose, Mark Freeman, Stevens, Baldo & Freeman, LLP, Beaumont, for appellant.

John A. Cowan, David P. Wilson, Provost & Umphrey Law Firm LLP, Beaumont, for appellees.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DON BURGESS, Justice.

Bringing five issues, Diamond Offshore Management Company ("Diamond") appeals an unfavorable jury verdict and judgment in this Jones Act death case that arises from an automobile accident in which Craig Guidry ("Guidry" or "decedent") was killed.[1]

Guidry worked for Diamond on the OCEAN TOWER, a jack-up rig docked at Sabine Pass at the time of the accident. The OCEAN TOWER's work schedule provided for its crew members to be on duty for fourteen straight days and then off for fourteen straight days. During their fourteen days on duty, they worked twelve hour shifts.

On the night of the accident, Guidry and several others finished their twelve hour shift on the OCEAN TOWER around 10:45 p.m. With Sammy Martinez driving his truck and Joe Daley driving his, the crew members went to see the OCEAN CONFIDENCE, another Diamond rig located nearby. Guidry rode with Daley.

Diamond was converting the CONFIDENCE for use in drilling operations. The CONFIDENCE had been a "floating hotel" in the North Sea, and was so large that it had a bowling alley and movie

---

1. The parties stipulated that Guidry was a Jones Act seaman at the time of the accident.

theater. Since it was unusual, everyone wanted to see the CONFIDENCE according to Richard McWilliams, a Diamond safety representative on board at the time of the accident. McWilliams further testified such visits could benefit Diamond as they could be partly educational. The crew members who went to see the CONFIDENCE would see a larger rig that could do the same work being done on the TOWER, but on a much larger scale.

However, because of fog that night, the men who went to the docking site of the CONFIDENCE were unable to see it. On their way back to the TOWER, they stopped at a bar where at least some of them apparently drank alcoholic beverages. They stayed at the bar until it closed at 2 a.m. Martinez testified he drank no alcohol and that none of the others did so far as he knew. Daley testified that members of the group were drinking alcohol. And when asked whether everyone was drinking, Daley responded "yes," presumably meaning all of them were drinking alcohol.

When Daley announced he was returning to the rig, one other employee left with him. But Guidry was not ready to go, and decided instead to ride with Sammy Martinez, the driver of the truck involved in the accident. Since Martinez already had two passengers, there was no room for Guidry in the cab. Drizzling rain had started, and Daley told Guidry he would get wet riding in the back of Martinez's truck. However, Guidry responded that he was not worried about getting wet; he had been wet before. According to Daley, Guidry retrieved his hard hat and boots from Daley's truck and went with Martinez even though there was room in the cab for Guidry if he had elected to ride with Daley.

After Daley left, Sammy Martinez and two other men got in the cab of the truck and Guidry got in the back by himself for the return trip to the TOWER. There were no seats or restraints for a person riding in the back of the truck. As Martinez drove down the paved road at 55–60 miles per hour, the truck slid to the left. Martinez tried to pull it back to the right and, in doing so, lost control. The truck spun twice on the road and then went off into a ditch. Martinez testified that the truck hydroplaned, a problem he had experienced in the past after replacing his regular truck tires with wide ones, known as "Fifties."

After the truck came to a stop, Martinez and the passengers noticed that Guidry was not in the back of the truck. They found him unconscious in the ditch. An ambulance transported Guidry to an area hospital where he was diagnosed with serious head injuries. Guidry was transferred to the neurosurgery service of the University of Texas Medical Branch–Galveston where he died from his injuries.

Officer Kirk Frederick, the police officer investigating the accident, testified it occurred at 2:13 a.m. and that conditions at the time of the accident included a misting rain, fog, and a wet road. Officer Frederick interviewed Martinez and determined he was not intoxicated. Consequently, Frederick did not perform a sobriety test. While Frederick concluded the cause of the accident was the driver's failure to control his speed, considering the road conditions, Frederick did not give Martinez a ticket.

The jury assessed the decedent with sixty-five percent of the negligence that caused his injuries and Diamond with thirty-five percent.

 Under the Jones Act, maritime workers may sue for their injuries caused by an employer's negligence and may assert their admiralty claims in state court.

*See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 405–06 (Tex.1998)(citing 28 U.S.C. § 1333(1)). A state court hearing an admiralty case must apply substantive federal maritime law but follow state procedure. *Ellis*, 971 S.W.2d at 406. The causation standard of the Jones Act is the same as that of the Federal Employers' Liability Act ("FELA") because the Jones Act expressly incorporates FELA and the case law developed under it. *Id.* Under FELA, a proximate cause standard is not used. Rather, we are to use a "featherweight" causation burden, namely "'whether the proof justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury for which the claimant seeks damages.'" *Id.* (quoting *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957)).

■ In reviewing sufficiency of the evidence in a Jones Act case, the state appellate court may not conduct a traditional factual sufficiency review of a jury's liability findings under the Texas "weight and preponderance" standard. Instead, we must apply the less stringent federal standard of review under which the jury is vested with complete discretion on factual issues about liability. *Ellis*, 971 S.W.2d at 406. "Once the appellate court determines that some evidence about which reasonable minds could differ supports the verdict, the appellate court's review is complete." *Id.* at 406 (citations omitted).

■ This standard is similar to our Texas legal sufficiency standard under which the reviewing court determines whether there is more than a scintilla of evidence to support a vital fact. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). In so doing, the court considers only that evidence supporting the jury's finding and reviews the evidence in the light most favorable to the judgment. In deciding whether there is more than a scintilla of evidence, the reviewing court considers whether the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995)) (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).

■ In its first issue, Diamond asserts the trial court erred as a matter of law in denying its motion for partial remittitur and entering judgment based on the jury's response to Question No. 4 because the jury's award of $400,000 is excessive as a matter of law. Thus, Diamond attacks the legal sufficiency of the evidence supporting the jury's award to Guidry's minor son for loss of nurture and services.[2] Question 4 defined loss of nurture and services as "the value of the nurture, education, physical, intellectual, and moral training of mi-

**2.** We consider Diamond's "matter of law" issue to be an attack on the legal sufficiency of the evidence supporting the award. While, as explained by *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex.2001) and *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989), a "matter of law" issue properly is raised only on issues for which the complaining party had the burden of proof (and, of course, Diamond did not have the burden of proof on this issue), we liberally construe Diamond's issue as a legal sufficiency com-

plaint. *See* Tex.R.App. P. 38.1(e); *Sterner*, 767 S.W.2d at 690.

However, as Diamond has not challenged the factual sufficiency of the evidence supporting the loss of nurture award, we have not conducted a factual sufficiency review. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998)("the question of whether damages are excessive and that a remittitur is appropriate is a factual determination made final in the court of appeals.")

nor children that [Guidry's son], in reasonable probability, would have received from Craig Guidry had he lived."

Relying on two Fifth Circuit cases from the 1980s, *Verdin v. C & B Boat Co., Inc.*, 860 F.2d 150, 158 (5th Cir.1988) and *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 141–42 (5th Cir.1986), Diamond maintains the award is over ten times greater than the maximum maritime loss of nurture award previously approved by the Fifth Circuit.

In 1986, the *De Centeno* Court assumed the decedent would have worked aboard ship twelve months per year. Considering the limited time the decedent would have had available to spend with his children, the Court determined that the record there would not support an award larger than $2,000 per year per child. *De Centeno*, 798 F.2d at 141–42.

In 1988, the *Verdin* Court, relying on *De Centeno*, determined that $2000 per year for the period of the child's minority adequately compensated for the loss, where the decedent was a crew member aboard a vessel and was home only about one-quarter of the time. *Verdin*, 860 F.2d at 157–58.

Thus, what *De Centeno* and *Verdin* both require is simply this: the record must support the jury's findings on damages.

Here, the record establishes that Guidry had a close and loving relationship with his young son. When Guidry was on the rig, he called home at least every other day. During his fourteen days off duty, Guidry spent most of his time with his son, feeding him, playing with him and changing his diapers. Guidry felt these things were part of his job as a father and he enjoyed providing that care. Guidry, thus, appears to have spent considerably more time with his son than the *De Centeno* and *Verdin* decedents did with their children, the

awards for whom were determined in the 1980s. Moreover, even Diamond's trial counsel in his closing argument told the jury that as to the education element of the award alone, he would "pick a number between 50 and $100,000 ... to pay for education of that boy." And as defined in the charge, any award to the child included elements other than education, *i.e.*, nurture, as well as physical, intellectual, and moral training.

Thus, in view of all of the elements the jury was to consider, we do not find the award so large as to " 'shock the judicial conscience.' " *See De Centeno*, 798 F.2d at 141 (quoting *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 783–84 (5th Cir. 1983)). Further, there was some evidence supporting the verdict that satisfies the *Ellis* criteria and more than a scintilla as required under *Havner*. *See Ellis*, 971 S.W.2d at 405–06; *Havner*, 953 S.W.2d at 711. Issue one is overruled.

█ In issue two, Diamond argues that the jury must have implicitly found Guidry was "on ship's business" or "in service to the vessel" and asserts there is no evidence, or alternatively, insufficient evidence supporting this implied finding, or alternatively the evidence proves as a matter of law that the decedent was not "on ship's business" or "in service to the vessel" at the time of his injury.

John Auth, manager of sales, safety and environmental for Diamond, was called to testify by plaintiff as an adverse witness. He stated that going to look at another rig would be "business related" or "company business." He also testified going to see the CONFIDENCE would be educational and further would be in "the same category as go[ing to] pick up three parts and bring[ing them] back to the rig from someplace. But, yeah, it's a big rig. It's certainly unique; and if they wanted to go

take a look at it, I wouldn't have a problem with it."

We review Diamond's "no evidence" and insufficiency of the evidence arguments under the standard set forth in *Ellis* as they are concerned with factual issues about liability, about which the jury has complete discretion. *Ellis*, 971 S.W.2d at 405–06. If some evidence supports an implied finding that Guidry was "on ship's business" or "in service to the vessel," then our review of these arguments is complete. *Id.*

■ We review Diamond's legal sufficiency complaint under the "no evidence" standard, as opposed to the "matter of law" urged by Diamond, because appellee had the burden to supply sufficient proof of whether decedent was "on ship's business" or "in service to the vessel," as explained in issue one.[3]

If going to see the CONFIDENCE was "business related," as Auth testified, then the return trip also was "business related." And the return trip is where the accident occurred, not in the bar. Auth's testimony alone is enough to satisfy both the federal standard explained in *Ellis* and the legal sufficiency-"no evidence" requirement. Issue two is overruled.

In issues three and four, Diamond asserts the trial court erred in refusing to submit to the jury Diamond's requested questions inquiring whether Guidry was injured while acting in service of the vessel and whether Martinez, the driver of the vehicle, was acting in service of the vessel at the time of the accident. Diamond contends both questions constitute threshold liability inquiries.

■ We review a trial court's decisions on submission of jury questions un-

der an abuse of discretion standard. *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *Isern v. Watson*, 942 S.W.2d 186, 190 (Tex.App.-Beaumont 1997, writ denied). A trial court abuses its discretion if its actions are "arbitrary, unreasonable, and without reference to any guiding rules and principles." *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997) (quoting *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996)). Rule 278 requires the trial court to submit requested questions to the jury if the pleadings and evidence support them. *See* Tex.R. Civ. P. 278; *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 663 (Tex.1999). But, Rule 277 dictates that inferential rebuttal questions shall not be submitted in the charge and allows the placing of the burden of proof to be accomplished by instructions rather than by inclusion in the question. *See* Tex.R. Civ. P. 277.

Question 1 of the charge asked: "Did the negligence, if any, of [Diamond and Guidry] legally cause the injuries to Craig Guidry in question?" Included in the "Instructions and Definitions" section of the charge was the following language:

A seaman's employer is legally responsible for the negligence of one of his employees while that employee is acting within the course and scope of his employment.

. . . .

A seaman's own wilful misconduct, consisting of something which is done in pursuance of some private avocation or business, or grows out of relations unconnected with the service of the vessel, or not logically incident of duty in the service of the vessel may constitute an intervening cause.

. . . .

3. Under the Jones Act, a seaman may maintain a cause of action if he suffers "personal injury in the course of his employment." 46 U.S.C. app. § 688(a) (1975).

A seaman's employer may be liable under the Jones Act for injuries to the seaman only if the seaman was injured 'in service of the vessel' or 'in the course of his employment.' Under the Jones Act 'course and scope' of employment includes the whole period of service to the vessel by the seaman. A seaman on shore leave may or may not be acting in service of the vessel, or in the course of his employment, for purposes of application of the Jones Act.

The trial court here properly stated the negligence question in a broad form and accompanied it with appropriate instructions and definitions in compliance with Texas procedure. *See* Tex.R. Civ. P. 277; *Hyundai Motor Co.*, 995 S.W.2d at 663–64. A trial court no longer is to use "separate, granulated questions for each element of a cause of action." *Harris County v. Smith*, 66 S.W.3d 326, 330 (Tex. App.-Houston [1st Dist.] 2001, pet. granted)(citing *Hyundai Motor Co.*, 995 S.W.2d at 663–64). Here, the question and instructions clearly informed the jury of the requirement that Martinez must have been acting in the course of his employment (or in the service of the vessel) for Diamond to be vicariously liable for Martinez's negligence and of the requirement that Guidry must have been acting in the course of his employment (or in the service of the vessel) in order to recover under the Jones Act.

Further, the trial court did not err in declining to submit Diamond's questions as they were inferential rebuttal questions or issues, which are properly submitted to the jury in instruction form. *See* Tex.R. Civ. P. 277. Here, appellees had the burden to prove Guidry was injured in the course of his employment. *See* 46 U.S.C. app. § 688(a). Thus, Diamond's contentions that Guidry and Martinez were not "in service to the vessel" seek to disprove the "course of employment" element that appellees had to prove to be entitled to recovery.

As explained in *Select Insurance Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978), "[a]n inferential rebuttal issue is one which seeks to disprove the existence of an essential element submitted in another issue." "The reasoning behind such labels is that 'they disprove by establishing the truth of a positive factual theory which is inconsistent with the existence of some factual element of the ground of recovery or defense relied upon by the opponent, and are therefore to be distinguished from a flat denial....'" *Id.* (quoting Hodges, Special Issue Submission in Texas, Section 15, at 40).

The trial court did not abuse its discretion in refusing to submit Diamond's questions. Issues three and four are overruled.

In issue five, Diamond says the trial court erred in excluding evidence of, and prohibiting counsel from arguing to the jury, the results of the decedent's blood ethanol tests in the decedent's medical records and in excluding Diamond's expert from testifying as to the quantity of alcohol consumed by the decedent based upon such blood ethanol test results.

Dr. Darla Sue Nunn, the emergency room physician who treated decedent testified that decedent's blood test was positive for ethanol, which she explained was a generic term for alcohol that one purchases in a liquor store. Excluded was Dr. Nunn's testimony regarding decedent's level of intoxication and the effect of such level on decedent's decision-making process.[4] However, decedent's emergency

4. In the excluded portion, Dr. Nunn testified that the decedent's blood test results showed

room medical records showing his ethanol level to be 160.30 were admitted into evidence.

 We review a trial court's evidentiary decisions by an abuse of discretion standard. *National Liab. and Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 528 (Tex. 2000). An abuse of discretion occurs where the trial court acts without reference to any guiding rules or principles, or in other words, where the act was arbitrary or unreasonable. *See Goode*, 943 S.W.2d at 446.

 As the Texas Supreme Court recently explained:

> To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. TEX.R.APP.P. 61.1; *[City of Brownsville v.] Alvarado*, 897 S.W.2d [750], 753; *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992). In determining if the excluded evidence probably resulted in the rendition of an improper judgment, we review the entire record. *McCraw*, 828 S.W.2d at 756; *Gee, [v. Liberty Mut. Fire Ins. Co.]* 765 S.W.2d [394], 396 [(Tex.1989)]. Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000); *Alvarado*, 897 S.W.2d at 753–54.

*Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex.2001).

 Thus, even if we assume that the excluded testimony was admissible, and that trial court erred in not admitting it, Diamond still must show that the error was harmful. *See Texas Dept. of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000)(citing TEX.R.APP. P. 61.1). Or stated differently, to be successful when challenging evidentiary rulings, the appellant must show that the judgment "turns on the particular evidence excluded or admitted." *Able*, 35 S.W.3d at 617 (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995)). We review the entire record to determine if the excluded evidence probably resulted in the rendition of an improper judgment. *Able*, 35 S.W.3d at 617. If the evidence is cumulative and not controlling on a material issue dispositive to the case, we do not reverse the trial court's judgment. *Id.*

Here it is clear the jury considered Diamond's evidence and accepted the theory that Guidry was negligent. The jury heard testimony that the employees had been drinking alcohol and also learned that decedent's blood test was positive for alcohol. In fact, the jury found that Guidry's own negligence was the primary cause of his injuries even though he was not driving the vehicle. Obviously, the jury concluded that Guidry's decision making ability was so impaired that he was 65% at fault for the injuries that ultimately caused his

an alcohol level of 160.3, twice what would be considered legally intoxicated in Texas. She further testified that a person with that level of intoxication might not be able to walk a straight line, would not be as coordinated as if he had not been drinking, and his decision-making ability would not be as good as if he had not been drinking. She further stated:

> And not knowing this particular individual, some people at a 160 would be severely

impaired as far as decision-making goes and definitely couldn't walk and would have very slurred speech. People who drink every week like on the weekends and whatnot might be able to tolerate this. A bigger person could tolerate this a little bit better. That doesn't mean they can make intelligent decisions, get behind the wheel of a car, operate machinery and not be a danger to themselves.

death, even though he was not the driver of the vehicle. And the record shows that Martinez should have been driving more slowly, considering the road conditions and the previous hydroplaning problems he had experienced with his tires. In addition, Guidry's level of intoxication was introduced into evidence as Exhibit 6, which shows his ethanol level was 160.30 mg/dl, and notes that levels greater than 400 are potentially fatal.

Under these facts, we do not find that Diamond has shown that the judgment "turns on the particular evidence excluded or admitted." *See Able*, 35 S.W.3d at 617. We do not find that the excluded evidence probably resulted in the rendition of an improper judgment. Issue five is overruled.

Accordingly, we AFFIRM the judgment of the trial court.

DAVID B. GAULTNEY, Justice, dissenting.

I respectfully dissent. "Course and scope" and "in the service of the vessel" are essentially the same issue. *See Braen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129, 132–33, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959); *see* also *Daughdrill v. Diamond M. Drilling Co.*, 447 F.2d 781, 783 (5th Cir.1971). An element of Guidry's cause of action—whether he was in the course and scope of his employment—was not submitted to the jury as a question that required the jury to determine the matter. *See* 46 U.S.C. § 688(a) (Supp.2001). Whether Guidry was in the course and scope of employment is a controlling fact issue in the case, and defendant brought this omitted element to the attention of the trial court. *See id.*

The majority asserts "in the service of the vessel" is an inferential rebuttal issue. I disagree. An inferential rebuttal issue is a defensive theory that presents a con-trary or inconsistent theory from the claim relied on for recovery; it is properly submitted as an instruction. *See Texas Workers' Compensation Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex.1999) (quoting *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex.1978)); *see also Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 365 (Tex.App.-Dallas 1993, writ denied). "In the service of the vessel" is part of the plaintiff's burden of proof, not a defensive theory. *See* 46 U.S.C. § 688(a).

The majority does not hold that the omitted element was established as a matter of law. The facts were in dispute. Whether Guidry diverted from the course and scope of his employment—and had not returned to his employment at the time of the accident—was a disputed controlling fact issue. Litigants are entitled to have controlling questions submitted to the jury if those issues are properly pleaded and supported by the evidence. *See Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995); *see also* Tex.R. Civ. P. 278.

Here the charge included a course and scope instruction but did not ask the jury to determine that fact issue. Defendant objected and submitted a proposed question asking whether Guidry was in the service of the vessel. The trial court rejected the question and overruled the objection to the defective instruction. The jury was not asked to—and therefore did not—determine whether the accident occurred in the course and scope of employment or in the service of the vessel.

I believe the trial court also erred in excluding the evidence concerning the extent of Guidry's intoxication. The evidence was relevant not only to the issue of the extent of Guidry's negligence but also to the issue of whether he had sobered up

enough to have returned to the service of the vessel at the time of the accident.

I would remand this case for a new trial. *See generally Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994) (remand because of defective jury instruction).