DIAMOND OFFSHORE
MANAGEMENT CO.,
Petitioner,

v.

Lela GUIDRY, Individually and a/n/f of
Hunter Guidry and as Independent
Administratrix of the Estate of Craig
Guidry, Respondent.

No. 02–0884.

Supreme Court of Texas.

April 8, 2005.

Rehearing Denied Oct. 14, 2005.

Michael K. Rose, Mark Freeman, Stevens Baldo & Freeman, L.L.P., Beaumont, Jacqueline M. Stroh, Crofts & Callaway, P.C., San Antonio, for petitioner.

Brent W. Coon, Brent Coon & Associates, Houston, David P. Wilson, Andrew Cowan, Provost & Umphrey Law Firm, L.L.P., Beaumont, for respondent.

PER CURIAM.

In this wrongful death action under the Jones Act,[1] the trial court rendered judgment on a verdict for the plaintiff of a deceased seaman, killed ashore when he was thrown from the bed of a pickup in a one-vehicle accident. A divided court of appeals affirmed.[2] Petitioner, the decedent's employer, complains that there is no evidence that at the time of the accident the decedent was "in the course of his employment", as required by the Act, but alternatively, even if there was some evidence to that effect, it was not conclusive, and the jury should therefore have been, but was not, asked to find whether the decedent and his co-employee, who was driving the pickup, were then in the course of their employment. We agree that the jury was not properly charged and therefore reverse and remand the case for a new trial.

Late one evening, at the end of their 12–hour shift, Craig Guidry and several of his fellow crew members left the *Ocean Tower*, a jack-up offshore rig docked for repairs in the Sabine Pass shipyard, and drove in two vehicles about five miles down the road to see the *Ocean Confidence*, a much larger rig also owned by their employer, Diamond Offshore Management

---

1. 46 U.S.C.App. § 688 ("Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.").

2. 84 S.W.3d 256 (Tex.App.-Beaumont 2002).

Co. Diamond did not object to their leaving. The weather was too foggy for anyone to get a good look, so they went instead over to the Chicken Crossing, a nearby karaoke bar, arriving about midnight. The testimony admitted at trial is conflicting about whether they had anything alcoholic to drink. They all left about 2:00 a.m., when the bar closed, to return to their rig, since they were in the middle of a two- or three-week hitch during which they lived and worked on the rig. Although it was drizzling, Guidry decided to ride in the bed of the pickup driven by his co-worker, Sammy Martinez. On the way, Martinez was speeding and lost control, and Guidry was thrown from the truck. He died of his injuries days later. The trial court excluded evidence that Guidry's blood-alcohol content was about twice the level for legal intoxication in Texas.

Guidry's wife, Lela, sued Diamond on behalf of herself, their son, and Guidry's estate. Ten members of the jury found that the negligence of both Diamond and Guidry caused his injuries, allocated responsibility 35% to Diamond and 65% to Guidry, and assessed damages of $1,250,000. The trial court rendered judgment on the verdict, awarding the plaintiff $620,672.42, including pre-judgment interest. As already noted, a divided court of appeals affirmed.

■ Jones Act lawsuits in state courts are governed substantively by federal maritime law and procedurally by state law.[3]

The plaintiff concedes, as she must, that to recover for Guidry's death, she was required to prove that it occurred while he was "in the course of his employment" within the meaning of the Act.[4] The parties disagree about what evidence is sufficient to meet this burden, and whether any was adduced.

■ Diamond argues for three reasons that none was. First, Diamond says, there is no evidence that it could possibly have benefitted from a few employees' drive-by, midnight viewing of another rig docked for repairs. But two of Diamond's managerial employees, John Auth and John McWilliams, as well as the plaintiff's expert testified that such a venture could have been in the course of employment. That testimony was some evidence to satisfy the plaintiff's burden. Second, Diamond contends, there is no evidence that Guidry himself went near the *Ocean Confidence* that night, even if his fellows did. But the jury could reasonably have inferred, from evidence that he suggested the excursion and accompanied the others, that he went by the rig as they did.

■ Third, and more importantly, Diamond argues that Guidry and his co-workers' principal destination all along was really the Chicken Crossing, which could not have been in the course of their employment. Diamond acknowledges that seamen may be on shore leave and nevertheless in the service of the vessel,[5] but it argues that the rationale for this rule is limited to "blue-water" seamen, for whom

**3.** *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222–23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998) (in a Jones Act case "the state court must apply substantive federal maritime law but follow state procedure").

**4.** *See* note 1, *supra; Braen v. Pfeifer Oil Transp. Co.,* 361 U.S. 129, 130–131, 80 S.Ct.

247, 4 L.Ed.2d 191 (1959); *O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U.S. 36, 38, 63 S.Ct. 488, 87 L.Ed. 596 (1943).

**5.** *Braen,* 361 U.S. at 132, 80 S.Ct. 247; *Warren v. United States,* 340 U.S. 523, 529–530, 71 S.Ct. 432, 95 L.Ed. 503 (1951); *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730–734, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

"[t]he voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports."[6] Diamond cites the Fifth Circuit's decision in *Sellers v. Dixilyn Corp.*[7] as an example of the proper distinction between "blue-water" seamen and rig workers. But in that case the rig worker was denied maintenance and cure for injuries he sustained in a one-vehicle accident on his way home for a week after having finished his hitch on the rig. Assuming *Sellers* is correct, Guidry's two-hour venture from his rig mid-hitch is not so far removed from his work there as to be, as a matter of law, outside the scope of his employment.

■ While there was thus some evidence that Guidry was in the course of his employment, that evidence was not conclusive. The jury was free to disbelieve the plaintiff's expert. Auth also testified that employees did not further Diamond's interests when they were off-duty and that going to a bar would not be business-related. McWilliams' credibility was in question because Diamond had terminated his employment under circumstances he believed were not justified. Further, a seaman's misconduct while on shore leave, such as intoxication, may take him outside the course of employment.[8] Thus, the issue whether Guidry was in the course of his employment at the time of the accident was one for the jury.

The trial court correctly instructed the jury as follows:

A seaman's employer is legally responsible for the negligence of one of his employees while that employee is acting within the course and scope of his employment.

\* \* \*

A seaman's own wilful misconduct, consisting of something which is done in pursuance of some private avocation or business, or grows out of relations unconnected with the service of the vessel, or not logically incident of duty in the service of the vessel may constitute an intervening cause.

\* \* \*

A seaman's employer may be liable under the Jones Act for injuries to the seaman only if the seaman was injured "in service of the vessel" or "in the course of his employment". Under the Jones Act "course and scope" of employment includes the whole period of service to the vessel by the seaman. A seaman on shore leave may or may not be acting in service of the vessel, or in the course of his employment, for purposes of application of the Jones Act.

The trial court then submitted a single liability question as follows:

Did the negligence, if any, of those named below [Diamond and Guidry] legally cause the injuries to Craig Guidry in question.

Diamond requested in writing that the trial court also inquire of the jury whether Guidry and Martinez were acting in service of the vessel at the time of the accident, and the trial court endorsed those requests as "refused". At the charge con-

---

6. *Aguilar,* 318 U.S. at 734, 63 S.Ct. 930.

7. 433 F.2d 446, 448 (5th Cir.1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 332 (1971).

8. *Cf. Warren,* 340 U.S. at 528, 71 S.Ct. 432 (noting that some cases hold that a seaman is not entitled to maintenance and cure for injuries resulting from intoxication); *Aguilar,* 318 U.S. at 731, 63 S.Ct. 930 (noting that seamen have been denied maintenance and cure for injuries resulting from intoxication though the exception has sometimes been "qualified in recognition of a classic predisposition of sailors ashore").

ference, the trial court stated that it would treat Diamond's refused requests as objections to the charge.

Diamond complains that despite the trial court's instructions regarding "course of employment", it never asked the jury for a finding on the issue. We agree. The plaintiff argues, as the court of appeals concluded, that the instructions clearly informed the jury of the requirement that Guidry and Martinez were acting in the course of their employment.[9] While that is true, the liability question made no reference to the requirement or allowed the jury to take it into account. The jury was asked to find only negligence and causation. The court of appeals concluded that the questions Diamond requested were improper inferential rebuttal questions,[10] but this is simply incorrect. As we have explained, "[t]he basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."[11] The questions Diamond requested did not present a theory inconsistent with the plaintiff's claim; they asked about elements of the plaintiff's claim.

The plaintiff argues that submitting separate questions on the issue of course of employment would be inconsistent with the mandate of Rule 277 of the Texas Rules of Civil Procedure that broad-form questions be used whenever feasible. But Diamond does not complain that questions about course of employment were not asked *separately;* it complains that no such questions were asked *at all.* Broad-form submission does not entail omitting elements of proof from the charge.[12] While the trial court could certainly have inquired about the separate issues of negligence, causation, and course of employment in a single question with proper instructions, Diamond was not obligated to request such a question. It was required only to object to the absence of any inquiry,[13] which the trial court acknowledged Diamond had done with its requested questions.

Moreover, the jury was not asked whether Martinez was acting in the scope of employment at the time of the accident, a prerequisite, the plaintiff concedes, for imposing vicarious liability on Diamond, his employer. Because the evidence on this issue, too, was conflicting, the trial court erred in not requesting a finding from the jury.

Accordingly, we reverse the judgment of the court of appeals, and without hearing oral argument,[14] remand the case to the trial court for a new trial.

Chief Justice JEFFERSON did not participate in the decision.

---

9. 84 S.W.3d at 264.

10. *Id.*

11. *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 477 (Tex.1978).

12. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 267 (Tex.1992) (Hecht, J., concurring) ("It should hardly need be said that broad form submission does not entail omitting elements of proof from the charge.").

13. *State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 239–239 (Tex.1992); *see also First Valley Bank v. Martin,* 144 S.W.3d 466, 475–476 (Tex.2004) (Wainwright, J., concurring).

14. See TEX. R. APP. P. 59.1.