OPINION

No. 04-05-00216-CV

LAREDO MEDICAL GROUP,

Appellant

v.

Gloria JAIMES, Individually and as Next Friend of Luis Angel Jaimes,

Appellee

From the 111th Judicial District Court, Webb County, Texas

Trial Court No. 2001-CVQ-001436-D2

Honorable Raul Vasquez, Judge Presiding




Opinion by: Alma L. López, Chief Justice

Concurring Opinion by: Catherine Stone, Justice



Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Karen Angelini, Justice



Delivered and Filed: January 31, 2007



REVERSED AND RENDERED



 Laredo Medical Group ("LMG") appeals the trial court's judgment awarding Gloria Jaimes, as next friend of Luis Angel
Jaimes, damages for injuries sustained by Luis during childbirth. LMG presents three issues on appeal contending: (1)
Gloria failed to establish respondeat superior liability against LMG; (2) the damages should be capped due to LMG's status
as a charitable organization; and (3) the judgment contains errors with regard to pre-judgment and post-judgment interest. 
Gloria filed a cross-appeal seeking a new trial on the ground that the trial court erred in granting a directed verdict against
her individual personal injury claims. Gloria also asserts three conditional cross-issues in the event the trial court's
judgment is not affirmed, contending: (1) the trial court erred in severing the claims against Sisters of Mercy and Mercy
Health System; (2) the jury's verdict refusing to find Dr. Esteban Alejo negligent was against the great weight and
preponderance of the evidence; and (3) the cause should be remanded in the interest of justice. We reverse the portion of
the trial court's judgment awarding damages against LMG and render a take nothing judgment in favor of LMG.

Background


 Gloria had her first pre-natal visit with Dr. Horacio A. Diaz on February 12, 2001. Gloria was a diabetic, was five-months
pregnant with her sixth baby, and had gained 48 pounds before her first visit. (1) Dr. Diaz resigned his position with LMG
effective June 1, 2001. On June 15, 2001, Dr. Diaz decided to induce Gloria's labor and attempt a vaginal delivery. Dr.
Diaz contacted Dr. Alejo requesting that Dr. Alejo perform a tubal ligation on Gloria after delivery. During this phone
conversation, Dr. Diaz discussed the approach he intended to take with Gloria. Luis's delivery was complicated by shoulder
dystocia. (2) During his delivery on June 16, 2001, Luis's nerves in his neck and upper right arm were torn, resulting in a
brachial plexus injury.

 Gloria initially sued Dr. Diaz but later amended her petition to add Dr. Alejo and LMG as defendants. Other defendants
were subsequently added in relation to a cause of action regarding indemnity coverage; however, the indemnity issue was
severed by the trial court and trial proceeded on the medical malpractice claim. A jury found Dr. Diaz and Gloria to be
negligent; however, the jury did not find any negligence by Dr. Alejo. The jury awarded Gloria approximately $2.8 million
in damages for the injuries to Luis. 

 Although no question was submitted to the jury with regard to LMG's vicarious liability, the initial judgment entered by the
trial court in March of 2005 stated that the jury returned a verdict in favor of Luis and against Diaz and his employer, LMG. 
LMG filed a motion objecting to the judgment because the jury had not rendered a verdict against LMG. After Gloria
settled with Dr. Diaz, the trial court subsequently amended the judgment to reflect a settlement credit. The amended
judgment set aside the prior judgment but provided, "except the judgment against Laredo Medical Group remains effective." 
A question then arose with regard to the effect the setting aside of the judgment against Dr. Diaz would have on LMG's
liability. The trial court then entered another amended judgment that stated, "The court made a finding based on the
stipulation of counsel for Laredo Medical Group that Laredo Medical Group is liable for the judgment against Dr. Diaz."
LMG also objected to this judgment on the basis that the stipulations at trial did not support the trial court's finding.

Vicarious Liability


 In its first issue, LMG contends that the trial court erred in entering judgment against it because: (1) Gloria failed to request
a jury finding with regard to vicarious liability; (2) LMG's vicarious liability was not conclusively established; (3) Gloria's
causation theory is based on the failure to perform a C-section delivery as opposed to Dr. Diaz's actions involving Gloria's
pre-natal care while Dr. Diaz was an employee of LMG; (4) LMG did not stipulate liability with regard to Dr. Diaz; and (5)
the trial court's vacating the liability finding against Dr. Diaz eliminated the predicate negligence for vicarious liability. 
Gloria responds that: (1) LMG has failed to preserve this issue for appellate review; (2) LMG is precluded from raising the
issue of its vicarious liability by various doctrines; (3) LMG stipulated to its liability; and (4) the trial court could enter a
deemed finding of vicarious liability.

 It is undisputed in this case that the jury charge did not submit a question with regard to LMG's vicarious liability for the
actions of Dr. Diaz. It is also undisputed that Dr. Diaz was not an employee of LMG at the time of Luis's delivery. Because
Dr. Diaz had resigned prior to the delivery, Gloria had the burden to request a jury question with regard to vicarious liability
because course of employment was an element of her claim against LMG. See Diamond Offshore Mgmt. Co. v. Guidry, 171
S.W.3d 840, 844 (Tex. 2005); J & C Drilling Co. v. Salaiz, 866 S.W.2d 632, 635-36 (Tex. App.--San Antonio 1993, no
writ). Given that no question was submitted that was necessarily referable to the theory of vicarious liability, no deemed
finding could be made based on the jury's verdict. Salaiz, 866 S.W.2d at 635-36. Despite the numerous sub-issues raised
by each party, our resolution of this issue turns on the absence of a stipulation in the record and our determination that the
evidence conclusively establishes that Luis's injuries were caused by Dr. Diaz's decision not to perform a C-section.

A. Stipulation

 Gloria contends that the parties stipulated that LMG was liable for Dr. Diaz's actions; therefore, she could not have waived
recovery. A stipulation is an agreement, admission, or concession made in a judicial proceeding by the parties or their
attorneys respecting some matter incident thereto. Shepherd v. Ledford, 962 S.W.2d 28, 33 (Tex. 1998). Stipulations are
generally favored by trial courts as a way of expediting litigation and will normally be upheld unless good cause is shown
for rejecting them. Valero Eastex Pipeline Co. v. Jarvis, 990 S.W.2d 852, 856 (Tex. App.--Tyler 1999, pet. denied);
Westridge Villa Apartments v. Lakewood Bank & Trust Co., 438 S.W.2d 891, 895 (Tex. Civ. App.--Fort Worth 1969, writ
ref'd n.r.e.). In any case, the issues to be tried may be limited or excluded by stipulation. Rosenboom Mach. & Tool, Inc. v.
Machala, 995 S.W.2d 817, 822 (Tex. App.--Houston [1st Dist.] 1999, pet. denied). Where a stipulation limits the issues to
be tried or considered by the jury, those issues are excluded from consideration. Id. If the stipulation is ambiguous or
unclear, it should be disregarded by the trial court. Id. In construing a stipulation, a court must determine the intent of the
parties from the language used in the entire agreement, examining the surrounding circumstances, including the state of the
pleadings, the allegations made therein, and the attitude of the parties with respect to the issue. Id. However, a stipulation
should not be given greater effect than the parties intended, and should not be construed as an admission of a fact intended
to be controverted. Id.

 In this case, the trial court found that counsel for LMG stipulated that LMG would be liable for the judgment against Dr.
Diaz. The stipulation in this case is based on an exchange that occurred between counsel and the trial court prior to trial
regarding the manner in which the case was to proceed after the severance of the claims relating to the indemnity. Having
reviewed the relevant portions of the record, the record establishes that the parties agreed not to mention LMG, and LMG's
counsel did not appear at trial to represent LMG. However, the discussion appears to leave open the possibility that LMG's
vicarious liability for Dr. Diaz's acts was to be "left for another day" and the discussion acknowledges that LMG was only
vicariously liable as to Dr. Diaz's actions to "some extent." (3) Accordingly, the stipulation is at the very least ambiguous as
to whether LMG was stipulating to liability for actions undertaken by Dr. Diaz after he resigned, therefore, the trial court
was required to disregard it. Machala, 995 S.W.2d at 822.

B. Causation

 Although Gloria amended her petition to add a claim regarding pre-natal care during the time Dr. Diaz was in LMG's
employ, the record establishes that LMG is not vicariously liable as a matter of law. All of the evidence and argument
presented to the jury established that Luis's injuries were caused by the failure to perform a C-section. Although Dr. Gerald
Bullock testified that Dr. Diaz's negligence during Gloria's pre-natal care caused Luis to be larger in size, (4) he nevertheless
opined that Luis would not have suffered any injuries if a C-section had been performed. (5) See Union Pump Co. v.
Allbritton, 898 S.W.2d 773, 776 (Tex. 1995) (asserting that legal cause is not established if the defendant's conduct does no
more than furnish the condition that makes the plaintiff's injury possible). It is uncontroverted that Dr. Diaz was not
employed by LMG on the day he decided to attempt a vaginal delivery. Because the evidence conclusively establishes that
all of Luis's injuries could have been avoided by the performance of a C-section, LMG is not vicariously liable for Dr.
Diaz's actions as a matter of law.

Gloria's Mental Anguish


 On cross-appeal, Gloria seeks a new trial based on the trial court's refusal to submit a question to the jury regarding her
mental anguish. From the evidence presented, Gloria sought to recover mental anguish damages for the mental anguish she
experienced in seeing the injuries to Luis, not the mental anguish for any injury personally inflicted on Gloria. The
distinction between mental anguish for Gloria's injuries as opposed to mental anguish for her witnessing the injuries to Luis
is critical. Although a mother can recover mental anguish damages for injury inflicted on herself during delivery, she may
not recover mental anguish damages as a bystander to the injuries inflicted on the child during delivery. See Edingburg
Hosp. Auth. v. Trevino, 941 S.W.2d 76, 79, 80-81 (Tex. 1997); Morrell v. Finke, 184 S.W.3d 257, 270-71 (Tex. App.--Fort
Worth 2005, pet. abated). The Texas Supreme Court has explained:

 We believe that the better-reasoned approach is not to permit bystander recovery in medical malpractice cases. The very
nature of medical treatment is often traumatic to the layperson. Even when a medical procedure proves to be beneficial to
the patient, it may shock the senses of the ordinary bystander who witnesses it. A bystander may not be able to distinguish
between medical treatment that helps the patient and conduct that is harmful. A physician's primary duty is to the patient,
not to the patient's relatives. Guided by these policy concerns, we hold that Texas' bystander cause of action precludes
bystander recovery in medical malpractice cases.



941 S.W.2d at 81. The Fort Worth court later clarified the law in this area as follows:



 In their third and fourth issues, the Morrells contend that the trial court erred by granting a JNOV on their claim against all
Defendants for bystander recovery for past mental anguish as the result of witnessing their child's serious permanent injury
at birth. The Morrells rely on Birchfield v. Texarkana Memorial Hospital, 747 S.W.2d 361, 364-65 (Tex. 1987), arguing
that the supreme court in that case recognized a parent's entitlement to mental anguish resulting from serious permanent
injury to a child by letting stand the jury's award of that element of damages.

 Appellees respond that the propriety under Texas law of recovering mental anguish damages was not challenged in
Birchfield and that the supreme court did not address such a right in that case by parents for injury to a child. Appellees
contend that the supreme court directly addressed and rejected a bystander claim by a husband for mental anguish damages
arising from his wife's injury in connection with an emergency C-section delivery in Edinburg Hospital Authority v.
Trevino, 941 S.W.2d 76, 81 (Tex.1997) (holding that "Texas'[s] bystander cause of action precludes bystander recovery in
medical malpractice cases"). We agree with Appellees that the Morrells' claim is controlled by Edinburg, which precludes
recovery of bystander mental anguish damages in a medical malpractice case as a matter of law. Accordingly, we overrule
the Morrells' third and fourth issues.

 

Morrell, 184 S.W.3d at 270. Accordingly, Gloria's cross-issue regarding her mental anguish is overruled.

Conditional Issue: Alejo's Relationship


 In a conditional cross-issue, Gloria asserts that the jury's failure to find a physician-patient relationship between Gloria and
Dr. Alejo was against the great weight and preponderance of the evidence. Because Gloria attacks the factual sufficiency of
the evidence on an adverse finding on an issue on which she had the burden of proof, to obtain a reversal she must
demonstrate that the adverse finding is against the great weight and preponderance of the evidence. Dow Chemical Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing the factual sufficiency of the evidence to support a finding, we
consider and weigh all of the evidence and set aside the finding only if it is so against the great weight and preponderance of
the evidence as to be manifestly unjust. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761-62 (Tex. 2003). The
jury is the sole judge of the credibility of the witnesses and the weight of the evidence, and this court must not merely
substitute its judgment for that of the jury's. Id. at 761.

 Gloria's expert, Dr. Gerald Bullock, testified that Dr. Diaz consulted with Dr. Alejo, who failed to perform a formal
evaluation despite having completed a written consultation report. Dr. Bullock stated that Dr. Alejo should not have
approved the vaginal delivery procedure without reviewing the ultrasound to determine Luis's size. Dr. Bullock further
testified that because Gloria was a severe diabetic, hospital policies required consultation with an obstetrician. Dr. Alejo
testified that if he had done a formal consultation, he would likely have concluded that a vaginal delivery was
contra-indicated. However, Dr. Alejo also testified that his discussion with Dr. Diaz was an informal consult and no
patient/physician relationship developed between Gloria and himself with regard to the delivery. Dr. Alejo and Dr. Diaz
both testified that Dr. Diaz called Dr. Alejo regarding a tubal ligation to be performed on Gloria by Dr. Alejo after the
delivery, and Dr. Diaz briefly discussed his approach to Gloria's delivery with Dr. Alejo. In addition, a defense expert, Dr.
Victor Vines, testified that it was within the standard of care for Dr. Alejo to engage in an informal consultation that would
not establish a physician/patient relationship, and a doctor can limit his engagement to such an informal consultation. Dr.
Vines also testified that Gloria was not a "severe" diabetic.

 Accordingly, the jury heard competing expert opinions as to whether the consultation was informal and whether the
applicable standard of care permitted Dr. Alejo to informally consult with Dr. Diaz. The jury also heard competing
testimony with regard to whether the consultation resulted in the establishment of a physician/patient relationship. Because
the jury is the sole judge of the credibility and weight of the evidence, Gloria has not met her burden for establishing that
the jury's refusal to find the existence of a physician/patient relationship was against the great weight and preponderance of
the evidence.

Conditional Cross-Issue: Severance


 In a second conditional cross-issue, Gloria complains that the trial court erred in severing the claims against Sisters of
Mercy and Mercy Health System from the medical malpractice case. The severance of claims rests within the sound
discretion of the trial court. Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 628 (Tex. 1996). A trial court properly
exercises its discretion in severing claims when: (1) the controversy involves more than one cause of action; (2) the severed
claim is one that could be asserted independently in a separate lawsuit; and (3) the severed actions are not so interwoven
with the other claims that they involve the same facts and issues. Id.

 In this case, the claims against Sisters of Mercy and Mercy Health System relate to whether fraudulent actions were taken
to reduce the amount of indemnity coverage that was available to LMG for any negligent acts of Dr. Diaz while Dr. Diaz
was employed by LMG and covered under its policy. This controversy clearly involved a separate cause of action that
could be asserted independently from the lawsuit seeking to establish that Dr. Diaz was negligent while employed by LMG. 
Whether Sisters of Mercy and Mercy Health System or any other defendant engaged in fraudulent actions relating to the
indemnity coverage for the potential negligence of Dr. Diaz was not so interwoven with the medical malpractice claim that
it involved the same facts and issues. Accordingly, the trial court did not abuse its discretion in ordering the severance.

Conditional Cross-Issue: Interest of Justice


 Gloria finally contends that a new trial should be ordered in the interest of justice. Gloria appears to be arguing that the
severance allowed LMG to present a unified front before the jury rather than having Dr. Diaz and Dr. Alejo blaming each
other. LMG responds that the argument is simply cumulative of the other cross-points, and a new trial should not be
granted because Gloria received a full and fair trial. Having reviewed the record, we overrule Gloria's request for a new trial.



Conclusion


 The portion of the trial court's judgment against Laredo Medical Group is reversed, and a take nothing judgment is
rendered in favor of Laredo Medical Group.



 Alma L. López, Chief Justice



1. As of May 21, 2001, Gloria only gained an additional five pounds since the date of her first visit; however, between the
date of her last office visit on May 21, 2001, and June 15, 2001 (the day prior to delivery), Gloria did not see Dr. Diaz, and
she gained an additional nine pounds. 

2. Shoulder dystocia occurs when one of the baby's shoulders becomes stuck behind the pubic bone. See Morrell v. Finke,
184 S.W.3d 257, 267 (Tex. App.--Fort Worth 2005, pet. abated).

3. During the discussion regarding this issue, the following exchange occurred:

 MR. RODRIGUEZ: There is one more issue with LMG, Judge, that now that we're talking about LMG that I want to get
clarified by the Court.

 Horacio Diaz was an employee of LMG about three or four months prior to the delivery of this child; where then he went
on his own; and he has - he has got insurance. The insurance is a million dollars in coverage.

 The reason we have amended the petition to include claims of improper follow, improper following of the patient.

 THE COURT: I understand.

 MR. RODRIGUEZ: So that should include claims while he was still employed by LMG.

 I just talked to counsel prior to starting today. And I asked if Dr. Diaz had made a demand on LMG to have coverage
pursuant to the indemnity agreement; or whatever coverage he had available.

 I understand that demand has been made. But there has been no response, formal response yet as to whether there is going
to be additional coverage, other than the million dollar policy.

 I just want to have the understanding that we're not waiving any rights to go after LMG for Horacio Diaz' negligence while
it occurred while he was employed with LMG.

 That's an issue that maybe it will be left for another day. But I just want to clarify to the Court what we're dealing with
here in terms of LMG. It's not only with Alejo; but it's also, to some extent, with Dr. Diaz.

4. Dr. Bullock testified that if Gloria's blood sugar had been controlled, "the baby would have been smaller," Gloria "would
never have had an 11 pound baby," and "[t]he inability to get the blood sugar down is what caused a substantial part of the
excessive weight."

5. This testimony is contained in the following record excerpts:

 Q. Based on [a] reasonable degree of medical probability, Doctor, do you have an opinion as to what caused the brachial
plexus injury to Luis Angel Jaimes?

 A. Yes.

 Q. Can you tell us what that is?

 A. The shoulder dystocia and the pressures that were exerted, whether by - through a combination of Dr. Diaz struggling to
get the baby out or Mrs. Jaimes pushing down like she was supposed do [sic]. But those forces together caused the baby's
nerve injuries.

******


 Q. Do you also agree with Dr. Alejo that had a C-section been done in this case Luis Angel Jaimes would have been a
normal baby today?

 A. Yes, I agree with him.

******


 Q. And in this case, Doctor, do you have an opinion as to whether the shoulder dystocia involving Luis Angel Jaimes was
preventable and predictable?

 A. Yes.

 Q. Explain.

 A. It was predictable in that you can't predict 100 percent that there will be shoulder dystocia. But in a baby that's predicted
to be 10 and a half pounds to 11 pounds it's between 18 and 20 percent. So this was predictable, even though not 100
percent.

 It was preventable in that a cesarean would have prevented it. So if you combine the fact that 18 to 20 percent of these
baby [sic] will have a shoulder dystocia, and not all those will have Erb's palsy, but all of them are - have difficult
deliveries. And it is completely preventable by cesarean section.

*******


 Q. ... Based on a reasonable degree of medical probability, sir, do you have an opinion as to whether, if a C-section was
done, sir, this baby would have been born without the injuries he suffered and sustained during the birthing process?

 A. Yes.

 Q. And what is that opinion, sir?

 A. That he would not have had any of the injuries.

*******


 Q. All right. And do you have an opinion, Doctor, based on a reasonable degree of medical probability had a C-section
been done at 3:15 in the morning, do you have an opinion as to whether the injuries and damages to Luis Angel could have
been avoided?

 A. Yes.

 Q. And what is that opinion?

 A. That certainly they would have been avoided had the cesarean been done at any of those times.