RED ROOF INNS, INC. and Accor Economy Lodging, Inc., Appellants,

v.

MURAT HOLDINGS, L.L.C., Appellee.

No. 05–05–00240–CV.

Court of Appeals of Texas, Dallas.

April 16, 2007.

Rehearing Overruled June 8, 2007.

Scott P. Stolley, Thompson & Knight, LLP, Dallas, for Appellant.

John W. Bickel II, Bickel, II, Bickel & Brewer, Dallas, for Appellee.

Before Justices WRIGHT, BRIDGES, and LANG.

## OPINION ON REHEARING

Opinion by Justice WRIGHT.

We withdraw this Court's opinion dated August 25, 2006 and vacate the judgment of the same date. This is now the opinion of the Court.

Before the Court are three motions for rehearing filed by Red Roof Inns, Inc., Accor Economy Lodging, Inc., and Murat Holdings, L.L.C. We grant the motion for rehearing filed by cross-appellee Accor Economy Lodging, Inc.

Red Roof Inns, Inc. and Accor Economy Lodging, Inc. (AEL) (collectively "Red Roof") appeal a judgment following a jury trial. In six points of error, Red Roof contends generally: (1) the evidence is legally insufficient to support the jury's finding that Murat performed its obligations under the franchise agreement; (2) the evidence is legally insufficient to support the jury's finding that Red Roof breached the franchise agreement; (3) the trial court erred in submitting certain instructions in the charge; and (4) the trial court erred in its submission of the charge with respect to damages.

By way of cross-appeal, Murat complains of the trial court's summary judgment on its tort and statutory claims. In four cross-points of error, Murat contends the trial court erred in granting summary judgment on its claims for: (1) tortious interference; (2) violation of the Louisiana Unfair Trade Practices Act; (3) fraud and negligent misrepresentation; and (4) breach of fiduciary duty.

We sustain Red Roof's third point of error with respect to charge error, reverse the trial court's judgment, and remand this case for a new trial. We sustain Murat's first cross-point of error and remand the tortious interference claim to the trial court. We overrule Murat's second, third, and fourth cross-points of error.

## Background

Murat Holdings, L.L.C. is a Louisiana limited liability company owned by Emanuel Organek and his wife. Organek formed Murat to acquire, own, and operate a hotel located in Baton Rouge, Louisiana. Instead of selling the hotel "as is" for a quick profit, Organek decided to purchase a Red Roof franchise and turn the hotel into a Red Roof Inn & Suites.

On December 15, 1998, Organek and Red Roof executed a franchise agreement. Subsequently, Murat commenced renovations at the hotel to convert it to a Red Roof. The hotel remained open during the renovations. Joe Oliveri, a Red Roof employee, made decisions as to what renovations needed to be done and when the hotel would be ready to open under the Red Roof name. The hotel consisted of 5 buildings numbered 100 through 500. The work scope, attached to the franchise agreement, required that the renovations in buildings 100, 200, and 300 be completed prior to opening. Oliveri later stated that only buildings 200 and 300 needed to be completed prior to opening and sent Organek a memo to that effect.[1]

On August 12, 1999, Oliveri came to inspect the hotel. Organek and Eugene Thill, the manager of the hotel during the renovations, were present at this inspection. Following the inspection, Oliveri said the hotel was "good to go," set an opening date of August 27, 1999, and scheduled

---

1. The memo stated that buildings 100 and 200 needed to be completed. Eugene Thill, manager of the hotel during renovations, contacted Oliveri when he received the memo and noted that Oliveri had verbally stated buildings 200 and 300. Oliveri admitted that the memo mistakenly stated buildings 100 and 200 instead of 200 and 300.

Red Roof trainers to come and prepare for the opening of the hotel as a Red Roof.

On August 13, 1999, following acquisition of Red Roof by Accor, management of Red Roof's operations was transferred to AEL, Accor's wholly owned subsidiary. AEL operated the Motel 6 chain, including three located in Baton Rouge. On August 23, 1999, Oliveri sent a letter to Murat stating that AEL now required that buildings 100, 200, and 300 be completed prior to opening as a Red Roof. In that letter, Oliveri stated that "with the change of control, came the directive" that Accor would require 100% completion of the renovations before opening. When Thill contacted Oliveri about the letter, Oliveri stated that AEL was "a lot tougher."

When Organek discussed the delay in opening, David O'Shaughnessy, AEL's executive vice president of franchise operations, told him that the hotel was "atypical" and did not fit AEL's idea of the Red Roof prototype. After the acquisition, AEL abandoned the Red Roof Inn & Suites concept and decided that it no longer wanted full-service hotels.

On September 17, 1999, Randy Evanchyck, a Red Roof director of franchise sales, called Murat and told him that AEL did not want the hotel in the Red Roof system. Red Roof offered to return the franchise fee if Organek would terminate the franchise agreement. Organek would not agree to termination.

Following an inspection of the hotel on October 11 and 12, O'Shaughnessy sent Murat a letter dated October 22, 1999. He stated that Murat was in breach of the franchise agreement because the renovations of buildings 100, 200, and 300 had not been completed. He offered Organek a thirty-day extension to complete the renovations noted by the inspectors on a punch-list if he would execute a written addendum stating that the renovations in buildings 400 and 500 would be completed within 180 days of opening. Organek sent O'Shaughnessy a letter on October 25, 1999 informing him that he did not receive the punch-list of needed renovations. Organek also stated that he had not received a copy of the proposed addendum.

Alan Rabinowitz, general counsel for AEL, sent Organek a letter on October 29, 1999. The letter was notice of termination due to Murat's alleged default. AEL gave Murat thirty days to cure the alleged default. On November 29, 1999, Organek, by letter, informed Rabinowitz that Murat had completed the additional renovation requirements from the punch-list. Organek asked that Rabinowitz issue the final license agreement. Rabinowitz responded by letter on the same date stating that Dean Savas, vice president of franchising for AEL, would be there on December 1, 1999 to inspect the hotel.

Murat filed this lawsuit on December 1, 1999. Murat alleged contract, statutory, and tort claims. Red Roof moved for summary judgment on all claims. The trial court granted summary judgment against Murat on the statutory and tort claims. The claims on the contract were tried to a jury. The trial court rendered judgment on the jury verdict in the amount of $5,806,000 plus prejudgment interest, court costs, and attorney's fees in favor of Murat. This appeal timely followed.

### The Contract Claims

 In its third point of error, Red Roof asserts the trial court committed charge error because it submitted an instruction on contract modification but it did not submit a question as to whether the parties modified the franchise agree-

ment.[2] Red Roof contends it is impossible to determine whether the jury found that the parties modified their agreement when it found that (1) Murat performed its obligations under the franchise agreement and (2) Red Roof breached the franchise agreement. We review claims of charge error for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

The Franchise Agreement, the Workscope, and the First Addendum to the Franchise Agreement were executed simultaneously on December 15, 1998. The Franchise Conversion Work Scope was part of the franchise agreement. The Work Scope provided: "All work in public areas and buildings 100, 200 & 300 referenced in this Workscope must be completed prior to opening as a Red Roof Inn. All work in buildings 400 & 500 should be completed within 180 days of opening as a Red Roof Inn." The franchise agreement provided that: "No amendment may be made nor shall any amendment be valid except in a written agreement signed by both you and us."

Murat pleaded modification and the jury charge included an instruction on contract modification as follows:

> A contract may be modified upon the mutual agreement of the parties and may occur through words or conduct, expressly or by implication. The plaintiff claims that the parties modified their Franchise Agreement by oral and writ-

ten modifications. The plaintiff must prove by the greater weight of the evidence that the parties agreed to modify their contract.

Although the issue of whether the parties modified the franchise agreement was a question for the jury, the charge did not include a question asking whether the parties modified their agreement.

The supreme court has recently held that a court cannot assume that a jury used an instruction to answer an unasked question. *Diamond Offshore Mgm't Co. v. Guidry*, 171 S.W.3d 840, 844 (Tex.2005). In *Guidry*, the trial court instructed the jury on course of employment, but did not ask the jury for a finding on that element of the plaintiff's wrongful death action. Moreover, the liability question made no reference to the course of employment instruction. The supreme court held the trial court erred in not obtaining a finding on course of employment. *Id.* The supreme court reversed and remanded for a new trial. We consider *Guidry* to be on point.

As Murat points out, in *Guidry*, the course of employment was an element of the plaintiff's claim. Although not a specific element of Murat's breach of contract claim, under the circumstances of this case, Murat had to establish first a modification of the agreement in order to establish that it met its obligations and to support a breach by Red Roof. Assuming that

---

**2.** The trial court also submitted an instruction on waiver. Red Roof contends this was error because Murat did not plead waiver. Even if Murat had properly pleaded waiver and obtained a jury finding of waiver, it still would have been necessary for Murat to prove that they modified their agreement. Therefore, a finding of waiver is not determinative of whether the parties orally modified the franchise agreement. *See Triton Commercial Properties, Ltd. v. Norwest Bank Texas, N.A.*, 1 S.W.3d 814, 817 (Tex.App.-Corpus Christi

1999, pet. denied) (whether couched in terms of "waiver" or "oral modification," the implied representations, if accepted as such, amounted to an oral alteration of the written deadline for paying the fee to extend the term of the agreement). However, a finding that the parties orally modified the franchise agreement necessarily implies that Red Roof waived the "no oral modification" provision in the franchise agreement. Accordingly, we do not address Red Roof's argument with respect to the waiver instruction.

the franchise agreement required completion of buildings 100, 200, and 300 prior to opening as a Red Roof, without a finding that the parties modified the franchise agreement to require completion of only buildings 200 and 300, Murat cannot prove that it met its obligations under the agreement by August 27. Moreover, Murat could not prove that Red Roof breached the agreement by not allowing it to open on August 27. Murat admitted that the renovations of all three buildings were not complete at Oliveri's inspection on August 12 when he stated that they were "good to go."

■ With respect to the contract modification instruction, Red Roof also objected on the ground that there was no evidence to support its submission. We disagree. In an August 2, 1999 memo from Oliveri to Thill, Oliveri stated that buildings 100 and 200 had to be completely renovated prior to opening and building 300 had to be completed within 180 days of opening as a Red Roof. When Thill received the memo he contacted Oliveri and told him that he had mixed up the numbers. Thill told Oliveri it was 200 and 300 that had to be completed, not buildings 100 and 200. Thill testified that Oliveri agreed. This testimony reveals a deviation from the work scope requirement that buildings 100, 200, and 300 had to be completed prior to opening. Murat admits that on August 12, 1999, the renovations in building 100 were not substantially complete. Organek accompanied Oliveri on his inspection of the hotel on August 12. Oliveri said the hotel was "good to go," even though building 100 had not substantially been completed. We conclude there was evidence to support the submission of the contract modification instruction.

The problem with the jury charge is that there is no way to know whether the jury found that Murat and Red Roof orally modified their agreement. The jury found in question one that Murat performed its obligations under the franchise agreement. Those obligations varied under the alleged modification. Without knowing whether the jury found modification, we cannot review the sufficiency of the evidence. The same concerns face the second jury question. We cannot know whether the jury found Red Roof breached the franchise agreement as written or the modified version requiring that the renovations in two of the three buildings needed to be complete.

■ On reviewing the record, we conclude that it was likely that the oral modification instruction formed the basis for the jury's findings that Murat met it obligations under the franchise agreement and Red Roof breached the agreement. However, because we cannot conclusively determine the effect of the instruction, the trial court's error in including the instruction without an accompanying question was reversible error that prevented Red Roof from presenting its case on appeal. Accordingly, we sustain Red Roof's third point of error.

### The Summary Judgment

By way of cross-appeal, Murat complains of the trial court's granting of summary judgment on its statutory and tort claims. In four cross-points of error, Murat contends the trial court erred in granting summary judgment on its claims for tortious interference, LUTPA violation, fraud/negligent misrepresentation, and breach of fiduciary duty. We sustain Murat's first cross-point of error and remand its claim for tortious interference to the trial court. We overrule Murat's second, third, and fourth cross-points of error.

### Standard of Review

The standard of review for a summary judgment is well-established. Tex.R. Civ.

684

P. 166(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In reviewing a traditional motion for summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 683 (Tex.App.-Dallas 2000, no pet.). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833.

■ When multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001).

**Choice of Law**

■ A choice of law provision in a contract that applies only to the interpretation and enforcement of the contract does not govern tort claims. *See Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (concluding that Texas choice-of-law clause in employment agreement did not encompass tort claims for personal injury arising out of employment). The franchise agreement provides that it "will be interpreted, construed and enforced in accordance with the internal substantive laws of the State of Ohio, without regard to conflicts of laws principles." By its language, the choice of Ohio law is limited to the interpretation, construction, and enforcement of the franchise agreement. Thus, Ohio law does not necessarily govern Murat's statutory and tort claims. *See Stier*, 992 S.W.2d at 433.

■■ Which state's law governs a substantive issue is a question of law, which we must resolve de novo. *Minn. Mining & Mfg. Co. v. Nishika, Ltd.*, 955 S.W.2d 853, 856 (Tex.1996). Texas courts use the "most significant relationship" test to decide choice of law issues. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex.2000); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971). Under that test, a court must consider which state's law has the most significant relationship "to the particular substantive issue to be resolved." *Hughes Wood Prods., Inc.*, 18 S.W.3d at 205.

■ The Restatement sets out the following general principles relevant in a choice of law analysis:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of the other interested states and the relative interests

of those states in determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971); *see also Hughes Wood Prods., Inc.,* 18 S.W.3d at 205. Section 145 states that the following contacts are to be taken into account when applying the principles of section 6 to determine the law applicable to a particular issue:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971). These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.* Furthermore, the number of contacts with a state is not determinative. *Doctor v. Pardue,* 186 S.W.3d 4, 10 (Tex. App.-Houston [1st Dist.] 2006, pet. denied). Rather, a court must evaluate the contacts in light of the state policies underlying the particular substantive issue. *Id.*

■ The choice of law is relevant to Murat's claims for tortious interference, LUTPA violation, fraud/negligent misrepresentation, and breach of fiduciary duty. The tortious interference, LUTPA violation, and breach of fiduciary duty claims focus on the actions and statements of officers of Red Roof and AEL in inspecting the hotel in anticipation of opening as a Red Roof. The primary focus of the fraud/negligent misrepresentation claim was the failure to disclose certain information.

Applying the most significant relationship test to these issues, we find that the Murat Hotel is located in Louisiana. The franchise agreement was signed in Ohio and Murat paid the initial franchise fee in Ohio. Murat's alleged damages flow from expenditures it incurred in renovating the hotel and profits it lost when not allowed to open as a Red Roof Inn. Murat is a Louisiana limited liability company whose principal office is located in Florida. During the course of the litigation, Red Roof was a Delaware corporation with its principal office located in Ohio. Murat's performance under the franchise agreement occurred primarily in Louisiana. Many of the alleged misrepresentations by Red Roof occurred in Louisiana. Moreover, applying the general factors in section 6, we find that Louisiana has a greater stake in the outcome than Ohio. The purpose of Louisiana's unfair trade and consumer protection act is to protect consumers in its state and to deter injury to competition. *See Landreneau v. Fleet Financial Group,* 197 F.Supp.2d 551, 557 (M.D.La.2002).

We conclude that Louisiana has the most significant relationship to the parties and the dispute. Accordingly, we apply Louisiana law to Murat's tort and statutory claims.

### 1. Tortious Interference

■ In its first cross-point of error, Murat contends the trial court erred in granting summary judgment on its tortious interference claim.

In its fourth amended petition, Murat alleged that "AEL embarked on a campaign to prevent Murat from receiving the Red Roof Inn & Suites franchise because the Hotel did not conform to AEL's 'new'

prototype standards for a Red Roof Inn & Suites hotel." Murat alleged that, following the Accor acquisition, AEL interfered with the franchise agreement and Murat's financing arrangement with GMAC.

Red Roof asserted that it was entitled to summary judgment on Murat's tortious interference claim on the following four grounds: (1) Red Roof's officers could not interfere with their company's contract; (2) Red Roof employee Dean Savas did not interfere with the contract; (3) any act by AEL was privileged; and (4) there is no evidence to support the claim of tortious interference.

In 1989, the Louisiana Supreme Court recognized for the first time a limited cause of action for tortious interference with contract. *See 9 to 5 Fashions v. Spurney*, 538 So.2d 228 (La.1989).[3] In *Spurney*, the court set forth five elements for a tortious interference claim: (1) a contract between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional conduct to cause the corporation to breach the contract or cause the rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) damages to the plaintiff. *Id.* at 234. The *Spurney* court recognized that actions of corporate officers are privileged in light of their fiduciary obligations to the corporation and its shareholders. *Id.* at 232. However, the privilege is not absolute. A corporate officer's action is not privileged if it is detrimental to the corporation or outside the scope of the officer's authority. *Id.*

In its first and third grounds for summary judgment, Red Roof asserted that

both Red Roof's officers and AEL were privileged from interfering with the contract. Red Roof argued that AEL was privileged to interfere with the franchise agreement because the two corporations had common ownership.

Murat presented summary judgment evidence raising a fact issue on whether the actions of certain officers were detrimental to Red Roof. Murat presented the affidavit testimony of Morris Lasky. Lasky is the CEO of Lodging Unlimited, a corporation that provides consulting, marketing, and management services to the hotel industry. Lasky testified that termination of the Murat franchise agreement was in AEL's interest because it protected its company-owned hotels in the same vicinity as the Prince Murat Hotel. Organek also stated in his affidavit that based on his conversations with O'Shaughnessy and other Red Roof representatives, the reasons behind the default letter had nothing to do with the conversion requirements. Rather, Organek believed that AEL sent the default letter because of the detrimental impact another Red Roof Inn would have on its corporate-owned Motel 6 hotels in the same vicinity. We conclude this evidence is sufficient to raise a fact issue on whether AEL's conduct was detrimental to Red Roof.

In its fourth ground for summary judgment, Red Roof alleged there was no evidence to support the tortious interference claim. In response, Murat presented summary judgment evidence in support of its tortious interference claim.

Thill testified by way of deposition that in early August 1999, prior to the Accor

---

**3.** In its cross-appellee's brief, Red Roof argues that summary judgment was proper because, under Louisiana law, there is no cause of action against a corporation for tortious interference. Red Roof did not assert this

ground in its motion for summary judgment. Accordingly, we do not address it. *See McConnell v. Southside Ind. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

acquisition, he and Oliveri walked through the hotel. At that time, Oliveri stated "we're good to go" and instructed Thill to line up the training. Lynn Stevens, employed by the hotel during the renovations period, was present at the inspection with Thill and Oliveri. She too recalled Oliveri stating that "it's a done deal." She took this statement to mean the hotel would be allowed to open as a Red Roof "very soon." Soon after the meeting, Stevens received marketing materials with the Red Roof name.

In Organek's affidavit, he stated that in a phone conversation with Ron Storto on September 3, 1999, Storto informed him that he had been instructed by O'Shaughnessy to make the renovations to buildings 400 and 500 mandatory and that the hotel would not be allowed to open until they reached an agreement on that issue.

O'Shaughnessy met with Organek on September 10, 1999 and told him that the hotel did not fit the "Red Roof profile." Soon thereafter, O'Shaughnessy offered Organek a refund if he would voluntarily terminate the franchise agreement.

Murat also presented summary judgment evidence that AEL interfered with its financing with GMAC. Jim Grant, vice president of GMAC sent a letter to Organek on October 14, 1999. In his letter, Grant stated that his attempts to contact Red Roof to obtain updates on the conversion of the hotel had been unsuccessful. He informed Organek that GMAC would not fund any further money until it received satisfactory communication from Red Roof as to the progress of the conversion.

As to damages, Organek stated in his affidavit that GMAC stopped funding the loan when Red Roof would not respond to its inquiries as to the progress of the

conversion. As a consequence, Murat was unable to obtain additional financing from traditional lending sources and had to borrow money from Organek and his wife. Also, when GMAC stopped funding the loan, Murat became delinquent in payments owed to the construction company. Organek testified that Red Roof's refusal to provide GMAC updates "impacted my ability to perform under the Franchise Agreement and harmed my business relationship with GMAC."

We conclude the above-outlined summary judgment evidence is sufficient to raise a fact issue on Murat's tortious interference claim and that the trial court erred in granting summary judgment on that claim. We sustain Murat's first cross-point of error.

## 2. Violation of LUTPA

 In its second cross-point of error, Murat contends the trial court erred in granting summary judgment on its claim that Red Roof violated the Louisiana Unfair Trade Practices Act. Murat alleged in its fourth amended petition that AEL and Red Roof violated the LUTPA by, among other things, "falsely and deceptively advertising in the Directory and Web Page that the hotel is a Red Roof Inn & Suites Hotel." Murat contends that such acts created substantial confusion in the submarket as to whether the hotel is a Red Roof or Ramada Inn. Red Roof sought summary judgment on this cause of action on the grounds that (1) LUPTA does not apply because of the choice of Ohio law provision in the franchise agreement, (2) there is no evidence that the listings caused any ascertainable loss of money as required under the statute, and (3) the claim is barred by the one-year statute of limitations.[4]

4. In its cross-appellee's brief, Red Roof ar- gues that summary judgment was proper be-

We have already determined that Ohio law applies only to claims involving the interpretation of the franchise agreement. We previously held that, under the substantial relationship test, Louisiana law applies to Murat's LUTPA claim. Thus, Red Roof's contention that LUTPA does not apply because Ohio law governs is without merit and summary judgment on this ground was error.

■■■■ A claim under LUPTA must be brought within one year. LA.REV.STAT. ANN. § 51:1409(E) (2003). In its motion for summary judgment, Red Roof asserted that Murat filed its LUTPA claim outside of the limitations period. It is undisputed that Red Roof did not assert this affirmative defense in its pleadings. An unpleaded affirmative defense may, however, serve as the basis for a summary judgment when it is raised in the summary judgment motion, and the opposing party does not object to the lack of a Rule 94 pleading in either its written response or before the rendition of judgment. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). Since *Roark*, the supreme court has clarified that the non-movant must present any issue it contends avoids the movant's right to summary judgment in a *written* answer or response to the motion. *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *see also Thompson v. Harco Nat'l Ins. Co.*, 120 S.W.3d 511, 515 (Tex.App.-Dallas 2003, pet. denied). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX.R. CIV. P. 166a(c). Red Roof asserted the affirmative defense of statute of limitations for the first time in its motion for summary judgment. Murat objected to the lack of pleading at the summary judgment hearing. However, Murat did not object in either its written answer or response. Because Murat failed to object in writing, the trial court could have granted summary judgment on the ground of statute of limitations. *See McConnell*, 858 S.W.2d at 341; *Thompson.*, 120 S.W.3d at 515.

■■■ Murat also contends that the statute of limitations does not bar its LUTPA claim because it pleaded a continuing offense. It contends that under Louisiana law if a party alleges a continuing LUTPA violation, the statute of limitations does not begin running until the violation ceases. Murat failed to present this ground for defeating Red Roof's motion for summary judgment to the trial court. Accordingly, this argument cannot be considered as a basis for reversal on appeal. *See* TEX.R. CIV. P. 166a(c); *McConnell.*, 858 S.W.2d at 341; *Thompson.*, 120 S.W.3d at 515.

■■■ Red Roof presented the affidavit of Anne Lawrence, the former director of E–Commerce for AEL. In her capacity as director of E–Commerce, Lawrence was responsible for supervising the construction and operation of "www.redroof.com" and the semi-annual publication of Red Roof's property directory. The winter/spring 2000 Red Roof directory included the Murat hotel. Lawrence stated that shipping of this directory began on November 30, 1999 and was completed by December 2, 1999. As to the website, Lawrence stated in her affidavit that the Murat hotel was added to the Red Roof website shortly after the parties executed their agreement. The hotel was listed as "coming soon." The website provided a phone number for the hotel but it did not

cause Murat is not a consumer within the meaning of LUTPA. Red Roof did not assert this ground in its motion for summary judg-
ment. Accordingly, we do not address it. *See McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993).

allow the user to make reservations for the hotel online. The summary judgment evidence shows that the hotel was listed on the Red Roof website prior to Murat filing the lawsuit. The summary judgment evidence also shows that the Red Roof directory was fully distributed within one day after Murat filed its lawsuit. Murat raised its LUTPA claim for the first time in its second amended petition filed on February 12, 2001. Murat did not file its LUTPA claim within the one year statute of limitations period. Accordingly, we overrule Murat's second cross-point of error.

### 3. Fraud and Negligent Misrepresentation

In its third cross-point of error, Murat contends the trial court erred in granting summary judgment on its claims for fraud/negligent misrepresentation. In its fourth amended petition, Murat alleged that "Red Roof made certain misrepresentations to, and admitted and concealed other information from, Murat to induce Murat's execution of the License Agreement."

Red Roof moved for summary judgment on the grounds that (1) representations about future conduct are not actionable, (2) Murat could not have reasonably relied upon alleged misrepresentations that contradict the franchise agreement, and (3) Red Roof had no legal duty to make disclosures of the merger talks with AEL.

■■■■■ Unfulfilled, future promises, without more, do not constitute fraud, especially where oral statements contradict the terms of a writing. *See Wright Bros. Corp. v. Colomb*, 517 So.2d 1194, 1197 (La. App. 4th Cir.1987). It would be unreasonable for Murat to rely on oral representations when it was contemporaneously faced with the contents of the written franchise agreement. *See America's Favorite Chicken Co. v. Suryoutomo*, 889 F.Supp. 916, 919 (E.D.La.1995). Aside from the fact that the alleged misrepresentations are not actionable in that they contradict the terms of the written franchise agreement, they are likewise not actionable because they are indistinguishable from Murat's breach of contract claim. The alleged misrepresentations that (1) substantial completion of the renovations was the standard, (2) Red Roof would be flexible with the renovations, and (3) Red Roof had a franchise-friendly culture are all tied to the breach of contract action. *See Technical Control Sys., Inc. v. Green*, 809 So.2d 1204, 1208 (La.App. 3rd Cir.2002).

■■■■ Murat also asserted that "Red Roof and/or AEL also represented that it would comply with all laws, including the legal obligation to make full and timely disclosures to Red Roof licensees and to the Federal Trade Commission regarding relevant facts which would, or could, impact existing Red Roof licensees." To establish fraud by failure to disclose, Murat must first establish that Red Roof had a duty to disclose. *See Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La.1992).

Murat contends that Red Roof committed fraud by failing to disclose that it was engaged in merger talks with Accor. The regulations of the federal trade commission require franchisors to disclose and periodically update certain information to *prospective* franchisees. 16 C.F.R. § 436.1(a) & (22) (2005).

Red Roof sent Murat a Franchise Offering Circular in February 1998. Subsequently, Red Roof began acquisition talks with Accor. Red Roof and Accor signed a confidentiality agreement on March 5, 1998 that prohibited Red Roof from disclosing the acquisition discussions. Murat asserted that if it had known of the acquisition talks between Red Roof and Accor, it might not have entered into the franchise agreement later that year in December 1998.

Murat contends that, pursuant to Federal Trade Commission regulations, Red Roof had a duty to update its Franchise Offering Circular to disclose its possible acquisition by Accor. Specifically, Murat contends that Red Roof should have updated the Franchise Offering Circular in March 1999, *after* it had already entered into the franchise agreement. Even if Red Roof had updated the circular in March 1999, Murat could not have relied on the information because, at that point, it was already a franchisee. Thus, the federal trade commission regulations do not apply in this situation because Murat was not a *prospective* franchisee. *See* 16 C.F.R. § 436.1(a) & (22) (2005). Because Red Roof did not have a duty to disclose under these circumstances, the failure to do so cannot constitute fraud.

Accordingly, we conclude the trial court properly granted summary judgment on Murat's fraud/negligent misrepresentation claim. We overrule Murat's third cross-point of error.

### 4. Breach of Fiduciary Duty

In its fourth cross-point of error, Murat contends the trial court erred in granting summary judgment on its breach of fiduciary duty claim. Red Roof sought summary judgment on that claim on the grounds that (1) the franchise agreement disavows the creation of a fiduciary relationship and (2) there is no fiduciary duty between a franchisor and franchisee.

 Under Louisiana law, there is no fiduciary duty between franchisor and franchisee. *See Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir.1992); *Cason v. Texaco, Inc.*, 621 F.Supp. 1518, 1526 (M.D.La.1985). Because there is no fiduciary duty between a franchisor and franchisee, the trial court properly granted summary judgment on Murat's breach of fiduciary duty claim.

Accordingly, we overrule Murat's fourth cross-point of error.

### Conclusion

We reverse the trial court's judgment and remand this case for a new trial. We sustain Murat's first cross-point of error and remand the tortious interference claim to the trial court.