

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-436-CV

PATRICK J. IRWIN AND SONDRA IRWIN APPELLANTS

V.

NORTEX FOUNDATION DESIGNS, INC. AND JERRY COFFEE, P.E. APPELLEES

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

The trial court granted summary judgment for Appellees Nortex Foundation Designs, Inc. and Jerry Coffee, P.E. on the breach of implied warranty and negligence claims of Appellants Patrick J. Irwin and Sondra Irwin.

---

[1] *See* Tex. R. App. P. 47.4.

In four issues, Appellants argue that the trial court improperly granted the final summary judgment. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellants purchased a home located in Flower Mound from Randy Bollig Builder, Inc. Bollig constructed the home; Nortex had contracted with Bollig to design the home's foundation; and Coffee, a Nortex employee, had stamped the engineer-designed plans for the home's foundation on behalf of Nortex. Home Owners Management Enterprises, Inc. d/b/a Home of Texas and Warranty Underwriters Insurance Company (collectively "HOME") issued a homeowner's insurance policy on the home. Appellants never had a contract with Appellees.

Appellants moved into the home in April 2002. In August 2006, they sued Bollig and HOME for alleged construction defects to the home. According to their third amended petition, the home had "sustained substantial movement of the foundation systems and footings, load-bearing beams, girders, lintels, columns, bearing walls, floor framing members[,] and roof framing members" and had shifted and cracked to such an extent "as to vitally affect the use of the home for residential purposes." Appellants averred that these and other defects in the home constituted "Major Structural Defects."

In October 2006, the trial court abated the case for arbitration between Appellants, Bollig, and HOME, and Appellants sued Appellees. The case was

2

eventually reinstated, and Appellants alleged in their third amended petition that Appellees negligently designed the foundation and breached their "common law implied warranties that the foundation was designed in a good and workmanlike manner."[2]

In October 2007, HOME paid Appellants $375,000 to settle Appellants' claims against them.[3] Thereafter, Appellees filed a motion for summary judgment on Appellants' breach of implied warranty and negligence claims. Appellees argued that Texas law does not recognize Appellants' implied warranty claim and that Appellants failed to allege the negligence action within the applicable two-year limitations period. Appellees also sought summary judgment under the "one satisfaction rule," arguing that Appellants had been fully compensated for all of their damages. The trial court granted Appellees' motion for summary judgment. Appellants filed a motion for new trial, which was overruled by operation of law, and this appeal followed. *See* Tex. R. Civ. P. 329b(c).

---

[2] This petition omitted Bollig, who filed a "suggestion of bankruptcy" in May 2007, as a named defendant.

[3] Appellees were not part of the settlement agreement.

### III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all

4

essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

## IV. IMPLIED WARRANTY

In their first issue, Appellants argue that the trial court erred by granting summary judgment on the claim that Appellees breached their common law warranty that they designed Appellants' foundation in a good and workmanlike manner. Appellants acknowledge this court's opinion in *Glenn v. Nortex Foundation Designs, Inc.*, which (1) recognized that Texas courts have consistently held that a property owner may not recover from a subcontractor with whom the owner had no direct contractual relationship,[4] (2) observed that this court had specifically held that a homeowner's implied warranty claim against a subcontractor is barred as a matter of law,[5] and (3) held that in a suit by a homeowner against a licensed structural engineer, it is not an exception to the rule that a homeowner has no claim for breach of an implied warranty against a subcontractor "where the structural engineer, who designed the foundation and applied his engineering seal to the foundation plans, failed to

---

[4] *See J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Raymond v. Rahme*, 78 S.W.3d 552, 563 (Tex. App.—Austin 2002, no pet.); *Codner v. Arellano*, 40 S.W.3d 666, 672–74 (Tex. App.—Austin 2001, no pet.).

[5] *See Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 21 (Tex. App.—Fort Worth 2002, no pet.).

properly design the foundation upon which the future homeowner's home would rest." No. 02-07-00172-CV, 2008 WL 2078510, at *3 (Tex. App.—Fort Worth May 15, 2008, no pet.) (mem op.).

Nonetheless, and notwithstanding the obvious similarities between the status of the parties in this case and the parties in *Glenn*,[6] Appellants argue that an implied warranty of good workmanship should be imposed in this case because their remedy against Bollig, the builder of the home, was nullified by its bankruptcy, thus creating a compelling need for recognizing the warranty against Appellees. As support for this argument, Appellants rely on language in *Codner*, which states that "[a]n implied warranty will not be imposed unless there is a demonstrated, compelling need for it" and that "[i]t is not necessary to impose an implied warranty as a matter of public policy if the plaintiff has other adequate remedies to redress the alleged wrongs committed by the defendant." 40 S.W.3d at 672 (citing *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998)); *see also Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 696–97 (Tex.

---

[6] Appellants are homeowners just like the appellant in *Glenn*. *See* 2008 WL 2078510, at *1. And Appellees, an engineering firm and licensed structural engineer who contracted with the builder of the home—not the homeowner—to design the home's foundation, are the same appellees as in *Glenn*. *See id*.

6

App.—Eastland 2002, no pet.) (stating that public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need).

The court of appeals in *Codner* declined to apply, as a matter of public policy, an implied warranty between a subcontractor and a homeowner because the appellant "clearly had adequate remedies to redress the wrongs he allege[d]" against the subcontractor. 40 S.W.3d at 674. Similarly, in *Glenn*, this court declined to apply an implied warranty between the homeowner and the subcontractor who designed the homeowner's alleged flawed foundation in part because the homeowner had recovered via an arbitration award over $227,000 in damages from the builder of the home and the insurance company. 2008 WL 2078510, at *1, 3. In this case, Appellants have already recovered $375,000 as a result of settling their claims against HOME for the defects to their home. Appellants recovered the $375,000 from HOME notwithstanding Bollig's filing a "declaration of bankruptcy." Thus, like in *Glenn* and *Codner*, Appellants have an "other adequate remed[y] to redress the alleged wrongs committed by" Appellees. *See Codner*, 40 S.W.3d at 672.

Appellants contend that their mediation and settlement with HOME was "not an adequate remedy" because their damages exceed $700,000, excluding attorneys' fees and punitive damages, and because they continued to have

claims pending against Appellees. But Appellants' opinion that they are entitled to recover an amount greater than the $375,000 they recovered from HOME does not obviate their remedy and recovery against HOME.

Appellants have no compelling need that justifies imposing an implied warranty in this case in light of their settlement with HOME, an entity with whom Appellants had a contract. *See Rocky Mountain Helicopters*, 987 S.W.2d at 53; *Glenn*, 2008 WL 2078510, at *3. Accordingly, we hold that the trial court did not err by granting Appellees' motion for summary judgment on Appellants' implied warranty claim. We overrule Appellants' first issue.

## V. NEGLIGENCE

In their second issue, Appellants argue that the trial court erred by granting summary judgment on their negligence claim. They contend that Appellees failed to plead the affirmative defense of limitations in their answer and that there is a genuine issue of material fact regarding when they knew or should have known that Appellees had allegedly negligently designed their home's foundation.

### A. No Objection to Limitations Affirmative Defense

Appellees did not plead the affirmative defense of limitations in their original answer (which is their only answer in the record), but they included the following bold heading and statement in their motion for summary judgment:

8

## V. SUPPLEMENTAL ANSWER AND DISCLOSURES

**25.** Defendants do hereby supplement their latest answer and all disclosures with all defensive theories and claims presented in this motion.

By arguing that Appellees are not entitled to summary judgment on their limitations affirmative defense because they failed to plead the defense in an answer, Appellants implicitly contend that the above statement contained in the motion for summary judgment is insufficient to properly plead the affirmative defense. *See* Tex. R. Civ. P. 94. We need not decide whether this statement is sufficient to plead the affirmative defense of limitations, however, because Appellants never objected to Appellees' alleged failure to plead the defense.

An unpleaded affirmative defense may serve as the basis for a summary judgment when it is raised in the summary judgment motion and the opposing party does not object in writing to the lack of a rule 94 pleading. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991) (reasoning that the failure to plead an affirmative defense under rule 94 is an issue that must be raised in the trial court or it may not be urged on appeal); *see McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993) ("[I]ssues a nonmovant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere

9

reference to summary judgment evidence."); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 688 (Tex. App.—Dallas 2007, pet. denied). If the nonmovant does not object to a variance between the motion for summary judgment and the movant's pleadings, it would advance no compelling interest of the parties or of our legal system to reverse a summary judgment simply because of a pleading defect. *Roark*, 813 S.W.2d at 495.

Here, Appellants objected in their response to Appellees' motion for summary judgment that Appellees had failed to plead the "one satisfaction rule" defense in their answer, but they did not object that Appellees had failed to plead the affirmative defense of limitations. Appellants also argued in their response that Appellees did not "prove all elements of its [limitations] affirmative defense," but this contention challenges the trial court's ruling on the merits of the defense, not on the absence of the rule 94 pleading. Accordingly, because Appellants did not notify the trial court in a written answer or response objecting that Appellees had failed to include the limitations affirmative defense in their answer, Appellants' objection may not be raised for the first time on appeal. *See Roark*, 813 S.W.2d at 495; *see also McConnell*, 858 S.W.2d at 341; *Red Roof Inns, Inc.*, 223 S.W.3d at 688. We overrule this part of Appellants' second issue.

10

**B.     Limitations**

Appellees argued in the trial court that summary judgment was properly granted on Appellants' negligence action because it was not filed within the applicable two-year limitations period.  They contended that the negligence action, which was filed in October 2006, accrued—at the latest—in June 2004 because at that time, Appellants had hired a professional engineer to assess their foundation, received a report detailing the engineer's opinion about the foundation, notified Bollig by letter of the report, and requested that Bollig make numerous repairs to the house.[7]

The discovery rule defers accrual of a cause of action until the plaintiff knows or, through the exercise of reasonable diligence, should know of facts giving rise to the cause of action.  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  The discovery rule is "a very limited exception to statutes of limitations" and applies only when the plaintiff's injury is both inherently undiscoverable and objectively verifiable.  *Id*. at 455–56.  An injury is inherently undiscoverable if, by its nature, it is unlikely to be discovered within the prescribed limitations period despite the exercise of due diligence.  *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). The

---

[7] Appellants do not dispute that their negligence action is governed by a two-year statute of limitations.

11

question is not whether the particular injury was actually discovered by the claimant within the limitations period but whether "it was the type of injury that generally is discoverable by the exercise of reasonable diligence." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

A defendant who moves for summary judgment on the affirmative defense of limitations has the burden to conclusively establish the defense, which includes proving when the cause of action accrued and, if applicable, negating the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the nature of its injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352, 355–56 (Tex. App.—Fort Worth 2005, no pet.). If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *KPMG Peat Marwick*, 988 S.W.2d at 748.

Appellees included in their summary judgment evidence a May 31, 2004 report produced by a professional engineer at Appellants' request. The report is addressed to Appellants and states, "This report constitutes the engineering opinion that you requested on the foundation at the referenced address. It

12

provides the professional opinion of the writer . . . ." The engineer who authored the report made the following "Exterior distress symptoms and observations" of the home: (1) "stairstep crack in brick and mortar to 1/8 [inch] wide"; (2) "wood to brick separation greater than ½ [inch] wide"; (3) "crack in perimeter beam to 1/8 [inch] wide"; (4) "trim pulled apart at joints"; (5) "gap between trim and top brickline"; and (6) "horizontal crack in mortar to 1/16 [inch] wide." The engineer made the following "Interior Observations": (1) "Door at position 'A' is slightly off level and low towards the low elevations"; (2) "Small crack in plaster joint in wall"; (3) "Repaired cracks in ceiling"; (4) "Window sill is off level"; (5) "Walls lean out"; and (6) "Trim buckle."

Also included in Appellees' summary judgment evidence is a June 11, 2004 letter drafted by Patrick Irwin and addressed to Bollig requesting that Bollig take the following action: (1) "Adjust piers if needed or foundation repairs"; (2) "Repair cracks and re-plaster and paint repairs"; (3) "Re-work trim where needed"; (4) "Align doors in the specified areas"; and (5) "Re-mortar exterior cracks as well as wing at garage."

The summary judgment evidence demonstrates that the Appellants' alleged negligently designed foundation was not inherently undiscoverable in June 2004. The independent engineer's report contained numerous details

13

identifying problems related to Appellants' foundation, and Appellants sent a letter to Bollig asking it to make foundation-related repairs to the house. To the extent the summary judgment evidence demonstrates that Appellants had not already discovered the alleged negligently designed foundation, Appellants could have discovered the alleged negligently designed foundation by exercising reasonable diligence with the information contained in the independent engineer's report. Appellees thus met their burden to show that in June 2004, Appellants knew or, through the exercise of reasonable diligence, should have known of facts giving rise to their negligence action. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *see also Horwood*, 58 S.W.3d 732, 734–35.

Appellants respond that a genuine issue of material fact exists as to whether their negligence action accrued in June 2004 because (1) they were not aware of any "major structural issues" when the June 2004 letter was drafted; (2) Bollig indicated that the matters were "cosmetic settling issues"; (3) the independent engineer stated that they should "let everything settle and then complete repairs in August [2004]"; and (4) the letter was "just to tell Mr. Bollig of [their] plan to wait until August, and then [Bollig] should complete these repairs." But Appellants' evidence regarding their subjective interpretation of the independent engineer's report is only relevant to whether they *knew* of facts giving rise to their negligence action. In light of the

14

information contained in the engineer's report identifying numerous foundation-related issues with the home and of Patrick's letter requesting repairs from Bollig, Appellants' evidence does not raise a genuine issue of material fact as to whether, through the exercise of reasonable diligence, they *should have known* in June 2004 about the facts giving rise to their negligence cause of action. *See Altai, Inc.*, 918 S.W.2d at 455–56.

We hold that Appellants failed to raise a genuine issue of material fact that the discovery rule tolled the accrual of the applicable two-year statute of limitations beyond June 2004. Because Appellants did not file their negligence cause of action until October 2006, months beyond the running of the two-year limitations period in June 2006, we hold that the trial court did not err by granting Appellees' motion for summary judgment on Appellants' negligence action. We overrule the remainder of Appellants' second issue.

Because we have overruled Appellants' first and second issues, we need not consider their third issue, complaining that the trial court erred by granting Appellees' motion for summary judgment under the "one satisfaction rule." *See* Tex. R. App. P. 47.1.

## VI. REMAINING "CAUSES OF ACTION"

In their fourth issue, Appellants argue that the trial court erred by granting a final summary judgment because Appellees did not challenge all alleged

15

"causes of action." They contend that Appellees never challenged their "actions" for agency/joint enterprise, unconscionable/knowing conduct, damages, attorneys' fees, litigation expenses, and mental anguish. According to Appellants' third amended petition, the only "causes of action" asserted against Appellees include negligence and breach of warranties.[8] We have already held above that the trial court did not err by granting Appellees' motion for summary judgment on Appellants' implied breach of warranty and negligence actions. We overrule Appellants' fourth issue.

---

[8] Agency and joint enterprise are theories of vicarious liability, *see St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 517 (Tex. 2002) and *Crooks v. Moses*, 138 S.W.3d 629, 637–38 (Tex. App.—Dallas 2004, no pet.); unconscionable or knowing conduct refers to conduct relevant to a claim for violation of the Deceptive Trade Practices Act, *see* Tex. Bus. & Com. Code Ann. § 17.50(a)(3), (b)(1) (Vernon Supp. 2008); generally, attorneys' fees or litigation expenses are not recoverable unless allowed by statute or contract, *see McDorman v. Rogers*, No. 09-06-00514-CV, 2008 WL 1970928, at *11 (Tex. App.—Beaumont May 8, 2008, no pet.) (mem. op.); and even if there was a fact issue as to when Appellants' negligence claim accrued, which there is not, damages for mental anguish are not recoverable in this case, *see Glenn*, 2008 WL 2078510, at *4 ("Because Glenn's pleaded negligence cause of action was for only professional engineering negligence that purportedly caused property damage to her home, she is, as a matter of law, not entitled to mental anguish damages . . . .").

16

## VII. CONCLUSION

Having overruled Appellants' first, second, and fourth dispositive issues, we affirm the trial court's order granting summary judgment in favor of Appellees.

BILL MEIER
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED: August 13, 2009

17